Thank you, Your Honor. Michael Rubin for the Plaintiffs. I would like to reserve five minutes for rebuttal if I may. Like most Fair Labor Standards Act exemption cases, this case largely turns on the record evidence and what was actually developed during the three-week liability trial held before Judge Jones. The principal factual questions before Judge Jones and before this panel to be evaluated under a clear error standard are, what were the primary duties, the actual duties performed by Farmers Claims Representatives in the three categories? What was their role within Farmers structure? Were they involved in servicing the marketplace offerings of the company, which is the test that this Court articulated in Bothell and did they actually run the business, advise on the management policies of the company? With regard to the good faith issues, the willfulness issues, and particularly the Section 259 estoppel issue, the question is, what did Farmers do when it was on notice that it was in potential violation of the Fair Labor Standards Act? Did it act as a reasonably diligent corporation should act by conducting a proper inquiry, by obtaining advice of counsel, by asking the Department of Labor to evaluate its situation, or did it merely, as Judge Jones found, try to protect itself because it had a predetermined position that all of its claims representatives were exempt? It is Farmers' burden in this case, as in every Fair Labor Standards Act case, to prove plainly and unmistakably that every single claims representative at issue is exempt, is a bona fide administrative employee. That burden extends through both prongs of the administrative exemption test. It has to meet all exemptions that are, of course, narrowly construed to further the congressional intent to benefit the employee. Farmers has to meet that heavy burden as to both the first prong, the directly related prong, and then the second prong, the discretion and independent judgment prong. And it must meet those burdens with respect to every category and, as I hope to discuss when we get into the property CRs, within those categories as well. Mr. Rubin, Judge Jones, I think, wrote in his order that the state law was, the various state laws involved were substantially similar to the federal law. Is that your view as well? That is largely true. To the extent we prevail under the Fair Labor Standards Act, we also prevail under state law because the federal law states a floor. Suppose you lose under the federal law. What does that do to the state law claims? They have to be independently evaluated. Several states, Colorado, Oregon, Minnesota, have standards that are even more protective of the employee than the federal law. Judge Jones did not separately analyze that. There are two categories of differences. The first is most of the states have a plain test that an employee on the second prong must customarily and regularly engage in primary duties that show discretion and independent judgment. More importantly, though, Colorado and Oregon have additional requirements that Judge Jones never addressed that would independently protect all CRs who worked in those states. So he should have addressed that as well. Those are additional bases for supporting, though, the conclusion he reached as to the APD and as to most of the property. Was there a stipulation that all state claims would be the same, the same rules as the federal? There was no stipulation. The parties, in fact, filed briefs discussing the differences between them. We articulated the differences that I just identified to Judge Silverman in great detail with citations. We've alluded to some of them. We've cited those provisions in our briefs here. We have certainly preserved that issue. We have not stipulated that the state law and the federal law are identical. Starting with the first prong, the best guidance for this Court is what it's already done in the Webster case that Judge Bull wrote, in the Bothell and the Bratt case that was both relied upon in Webster that the Department of Labor has itself relied upon in numerous instances. Those cases articulate the basic standard under the first prong, whether an individual's job duties are directly related to management policies and general business operations. First, those cases make clear that the tool that is often used for analyzing these cases shorthand, the administrative production dichotomy, is a tool that is readily applicable in a service case like this. Webster said so explicitly. That is a shorthand tool. That is not the end of the analysis, but it helps guide the analysis. Judge Jones simply disregarded it. That was plain error. He said it doesn't apply in the service context. We know from Ninth Circuit cases that it does. But what does the administrative production dichotomy actually do for us? It helps to distinguish different categories of employees based upon the duties they perform and the role they have within the company. The claims representatives in this case are half the workforce. They service the product. They, as in Bothell, which is the case of the field engineer who serviced for the customers the robotic testing equipment, they make sure that things work properly in the field. They do not affect the structure of farmers' operations. They affect the mode of servicing what Bothell called the marketplace offerings. The administrative production dichotomy is intended to distinguish between those who administer the actual core business functions, who decide how the business will operate. In this case, who performed the tasks identified in paragraph 32 of Judge Jones' amended finding of fact. Those are all the functions that are typically the functions of bonafide administrators, and he concluded that none of those tasks performed in paragraph 32 are actually performed by the claims representatives. Would you agree that the Department of Labor regulations don't generally favor your position? No, I would not agree with that at all. I would say that the Department of Regulations, which largely require deference and appropriately require deference, say that these issues must be resolved on a case-by-case basis. They say that job titles do not make the difference. They set forth the standards, which are precisely the standards that we are urging this Court to adopt and the Ninth Circuit adopted in Bothell, Bradford, and Redford. You don't think claims representatives are included as a type of person that is contrary to your position, right? No, that's actually not right. There is a regulation that makes a reference, that's 205C5, to claims adjusters and agents. We've explained the basis for that, how it came out of the 1940 Stein Report, and how it did not refer to the run-of-the-mine insurance adjusters like farmers uses, but Stein specifically referred to an individual who handled all claims against an oil company. And, in fact, if you're looking at job titles within the regulations, 205C2, three subsections earlier, specifically says that an inspector for an insurance company's duties don't satisfy the substantial importance requirement of the 205C2. And 778-403, 778-404, and 778-405, which are called the BELO regulations based on the Supreme Court's BELO case, make specific reference to insurance adjusters. Similarly, there's a provision in the Discretion and Independent Judgment Regulations, Section 207, that makes specific reference not only to inspectors, but then in a later parenthetical giving explanations, those inspectors who engage in insurance risk inspection. So, quite to the contrary, I would say if you look at the references to insurance agents in the regulations, we win by a count of the numbers, five to one. We don't think you should be looking, though, to the reference to the names. We think you should be looking at the substance of the regulations. The substance of the regulations tell you how to apply the administrative exemption analysis, and that analysis is what we're relying on here, as this Court did in the cases that I cited earlier. The claims adjusting is an important component to farmers' business. That is a product that it sells to its policyholders. It provides to its policyholders. As Bothell itself said, whether it's the primary product, the secondary product, the ancillary product doesn't matter. If it is the type of product or service that someone who purchases, in this case an insurance policy, would require the insurer to provide, you don't buy a policy unless you're permitted to file a claim and have the claim adjusted. And that is a service provided to the customers, and that's how it should be analyzed from the perspective of the first prong. Bell v. Farmers Insurance Exchange, the only case other than this that has gone in any great detail into what the claims representatives working for farmers actually do and how their job duties fit within the first prong, twice analyzed in extensive detail, relying principally on federal cases, including this Court's case, DOL opinion letters, and DOL regulations, concluded in two separate appellate opinions, at 87 Cal. 4th and 115 Cal. 4th, that these CRs in all categories were not exempt under the first prong because they did not have a sufficiently direct effect on the formulation or development of the core structural policies of the business. Instead, their job was dealing with the product offerings, the marketplace offerings, ensuring the customers got what they paid for. Judge Jones' analysis, not on the first prong, not only did he utterly and wrongly disregard the administrative production dichotomy, but he didn't substitute that tool for any other mode of analysis. What did he say in the three short sentences he devoted to this? He said that they execute or carry out claims adjusting policies. But that doesn't get us anywhere. Every employee of every company executes or carries out the company's policies. The second thing that he said was that in the aggregate, back off, the first prong has two elements. It must be directly related to business management policies, and it has to have a substantial impact. He analyzed the substantial impact by aggregating all of the work that all of the claims representatives do. Even though the regulations themselves explicitly state in 205C6, and here again Judge Rhodes is another example where we rely on the tests that work in the regulation, not on job titles, that you must look at the work of each particular individual and determine whether that work is of substantial importance. What are your comments regarding this Fifth Circuit case where the plaintiff, who has the unfortunate name of Cheatham, Cheatham v. Allstate, does that affect our decision anyway? Cheatham applied the correct analysis and did exactly what I would like this Court to do, which is to apply a clear error analysis, the findings of fact, and then to apply the regulations. Cheatham, there are factual differences between that case and this case, but Cheatham deferred to the findings of the district judge. The district judge in that case concluded that the CRs in that case, who had more responsibilities and greater discretion than the APDs and the property, and we submit even the liability adjusters in this case, the Court of Appeal concluded that that was not a clearly erroneous finding. Judge Jones went into great detail, and I'll go into some of the findings in a moment in the time remaining on the second prong, but Cheatham simply says that deference to the information is essential in a case like this, particularly when you have a three-week jury trial, as we did in this case. As far as the second prong is concerned, it's important that we analyze, as Judge Jones did, each separate category. Is this a jury trial, did you say? This was not a jury trial. This was a bench trial. Bench trial, okay. All right. His findings should be reviewed for clear error, as the Fifth Circuit reviewed findings for clear error in Cheatham. As far as the APD, the out-of-physical damage, he found that their basic job was estimating claims. What they did is largely objective and technical. There was virtually no discretion involved in the work that they performed. There are several documents in the record that I would like the Court to pay particular attention to in determining this, because in the trial record, we have a lot of individual testimony by claims representatives, by supervisors, but we also have some very important documents. We have the documents by which these individuals were trained. We have the guidelines that they were required to abide by. We have the regulations which ensured that they would perform their jobs within narrow, clearly regulated parameters. The training manual, Exhibits 1084 to 1085, clearly limits the amount of discretion that the claims representatives have at every stage. The manual, Exhibit 1011, we quoted from many of these in our papers. In particular, because Judge Jones seemed to focus on coverage, I want to address the coverage. There is a document called Questionable Coverage Claims. As Judge Jones himself said, coverage determinations usually are routine. He said that at page 493 and 502. The Questionable Coverage Claims Manual, and this is just one example for many I could quote from those exhibits that I mentioned before. This is Exhibit 1050. It also says the same thing on Exhibit 2160, 2233, and 2286. Questionable Claims Manual, which we quote from page 30 of our excerpts. Don't try to uncover a coverage question that doesn't exist. You will find a majority of files investigated involve no coverage at all. No coverage at all, majority. Your function in an investigation of a questionable coverage claim is one as fact gatherer. The regulations talk about fact gatherers. That is what these individuals are. Supervisors are there at every stage of the review that tell them what to do to evaluate what they do. Just briefly, let me address Section 259. You mentioned you wanted to reserve some time, but go ahead and finish. I will. I'm just going to do this quickly. 259, good faith, is an estoppel defense. It's for a defendant who was found to violate the law, and it excuses the violation of the law if it was based on specific advice by the administrator of the Department of Labor. In this case, Judge Jones made legal error and factual error. In his 259 analysis, he said that there was good faith before the Price Memo for two reasons. First, because of industry practice. That is an impermissible consideration. The statute and the regulations are very clear. Industry practice is irrelevant to a 259 defense. Secondly, he made a specific finding that farmers relied on DOL opinion letters. As we've demonstrated in our briefs, none of the decision makers at Farmers saw a single DOL opinion letter until sometime after November 2002. So there is no possible way that the good faith determination could be sustained, and I'd like to reserve the rest of my time if I may. Thank you very much, Mr. Rubin. Good morning, I'm Theodore J. Butrus, Jr., representing Farmers Insurance Exchange. Let me begin- Could you pull the mic up a little? Yes, certainly, Your Honor. The, Mr. Rubin said, I think, several times that the judge's findings, Judge Jones's findings should be reviewed by clear, under clear error standard, but he ignores the judge's detailed factual findings, 1 through 31, that where Judge Jones found in great detail that all of the farmers claims representatives engaged in all of the factors that the Department of Labor has recognized indicate that insurance claims adjusters are engaging in work that is administrative in nature and exempt. And in the plaintiff's brief in this morning, counsel has not sought to apply the clear error standard. Basically, plaintiff's entire brief on their appeal seeks to just re-argue the facts without regard to the fact that Judge Jones found that all of the claims representatives at the company interviewed witnesses, investigated claims, planned out the investigations, made credibility determinations, estimated losses, negotiated, made coverage recommendations, fraud recommendations. All the sorts of things that the Labor Department has really for almost 60 years indicated means that insurance claims adjusters are exempt. And as Judge Rhodes pointed out, the Department of Labor has not been at all inconsistent on these points. It has said over and over again since the Stein report in 1940 that insurance claims adjusters who engage in the typical type of work that claims adjusters engage in are generally thought to be exempt. And this isn't the only thing that Mr. Rubin focused on this morning was the 1940 Stein report. But there's much more than that. It's much more recent. The most recent, I think, authoritative articulation by the Labor Department was in the 2004 regulations. The department revised and restated the administrative exemption and other exemption rules under the federal overtime laws. And in section 203A, the lead example of a job category that qualifies for the exemption under the administrative exemption, it listed insurance claims adjusters, and it said that generally insurance claims adjusters who engage in the type of tasks that I just mentioned should be treated as exempt. And I think it's important to note that one of the plaintiff's law firms, the lead counsel in class action, argued to the Department of Labor that the department should not include insurance claims adjusters in the regulation as an example, argued to the Department of Labor that this production dichotomy should be given more prominence in the service sector. And the department rejected that argument. I think that, as the Webster decision indicated, that determination by the department is entitled to deference. And under the Auer decision, it's controlling unless it's unreasonable or inconsistent with the regulations, which we believe it is not. I have a question, and I don't know whether this fits really literally under the reg at any point. But is there any significance to the fact that such a high percentage of the insurance company's employees are claims representatives? I don't think so in terms of the percentage of employees within the company. I think the regulations make very clear that the fact that numerous employees engage in tasks that are deemed to be of substantial importance, as Judge Jones and the Department of Labor in opinions in many courts have found, does not mean that those employees do not qualify as exempt. The regulations specifically state that, noting that sometimes exempt employees, administrative employees, are servicing the business in a way that is of great significance. And again, Counsel for Plaintiffs just noted that claims adjusting is an important part of the business of the company. And so I think the regulations directly support Farmer's position, that the fact that a large number of the employees engage in claims adjusting does not in any way undermine the exemption. Is there a decided precedent, any decided precedent, that discusses a case where, you know, 40% or 50% of employees of a company are exempt? Your Honor, I'm not sure, but I believe the McAllister case from the Eighth Circuit may talk about the fact that there are numerous claims representatives. I don't think any have drawn that line. But I think that the way the regulations themselves deal with the issue is very persuasive and controlling. And the fact that here, each of the claims representatives, as Judge Jones found as a matter of fact, usually pays out claims of a million dollars or more. And here we have 1,000 or more claims representatives. The class representatives in this case, I think, if I'm tabulating this right, means they're paying out a billion dollars a year in claims. That is of substantial importance to the business. They are engaged in activities servicing the business that really go to the core of implementing and administering the insurance policies. And the fact that there are many of them, I don't think detracts either from either prong of the test. If we agree with you, what happens to the state claims? On the state claims, Your Honor, the district court, in his opinion, in our excerpts of record, it's on page 273, talked about the fact that he viewed the state claims to be addressed under the same standards. The case was litigated that way, and the plaintiffs had sought class certification. And I don't think that they ever went back to the judge and amend that or change his ruling that the state claims could be dealt with all at the same time under the same standards as the federal standards. So- He's not correct about that, was he? I mean, there are differences between the federal statute and the Oregon, Colorado, and Minnesota statute. There do seem to be differences, Your Honor, but I think the class has waived the ability to litigate those. Now, at this point, having proceeded through the case, treating them all the same. Why do you say they treated them all the same? I don't see that in the record that they did that. I think once the judge, again, in his findings, announced that he was treated- By that time, the game's over. Prior to that, they argued that there were differences. I think — I guess, Your Honor, our view would be, one, at that point, plaintiffs could have gone back to the judge and asked him to clarify or actually make findings and file the motion for reconsideration. You're not required to do that. I mean, if the judge got it wrong, he got it wrong. I think because his findings were at the liability stage, Your Honor, I think that he invited further briefing during the damages on differences. That would have been an opportunity for them. But if the Court disagrees with me on that, I think then the proper result would be to have further proceedings in the district court on the state law claims. I do think there's grounds for simply affirming based on the record, but I think at most, it would require a remand on the state law claims. If they're different, those state laws, are there significant differences or just different? Some of the provisions are — have different language, and I don't think the record really reflects how — I mean, the judge found that they were not significant, and I think — I think he's correct in the sense that his findings about the type of activities that the claims representatives engaged in meet those tests, but it's not spelled out in the record in any great detail. I think that we're correct, that they're not significant, but there are some — like the giving advice to the executive, I think, is Colorado or one of those. I think we could meet that test, but it's not spelled out, and I think there's ample grounds simply to affirm, given that those state laws, to the extent they raise differences, make it questionable whether those state law claims should have been included in — as part of an omnibus class of this type. We believe that the district court was absolutely correct, and that his decision on the first prong of the test, the directly related to management and business operations, that the farmers' claims representatives met that test. The production dichotomy, this court in Bothell and Webster and all those decisions, wasn't embracing that test, and in fact, it was fending it off in terms of indicating that, yes, that could be one helpful rule of thumb, but it's not a determinative test. And again, the Department of Labor has repeatedly rejected the notion that that is a useful test in this context. The second prong of the test is really the only place where we believe that the district court erred, and it was on several categories of claims adjusters, the auto-physical damage claims adjusters. The court found that those claims adjusters, like all the others, engaged in the tasks that have traditionally been viewed as administrative, and I think the primary duty of those claims adjusters is adjusting claims, which is of substantial importance and meets the first prong. And at that point, I think, as a matter of law, the correct ruling is that they, too, are exempt. So we would ask the court to reverse on that question, on that issue. And with respect to the property claims representatives, again,  where there is, admittedly, some fuzziness, or at least there was when he was deciding it, by creating this $3,000 threshold test, and we respectfully submit that that test just doesn't work in this context, and that the property claims representatives and the others who fell into that category, based on the judge's specific factual findings that they exercise and that their work includes, and that's the test, whether their work includes tasks that require the exercise of discretion and independent judgment. I think that the court's findings make clear that their work does include discretionary and judgmental judgments, and therefore, they, too, are exempt. Finally, with respect to the willfulness and good faith findings, farmers was operating against the backdrop of decades of guidance from the Department of Labor. We don't contend that the Department of Labor laid down some ironclad rule, but the guidelines in these interpretive opinions and regulations all pointed towards the fact that farmers' claims representatives were exempt. And the Bell decision, as Judge Jones found, gave very little guidance and, in fact, was flatly incorrect on fundamental factual findings. It was decided at summary judgment. And farmers' head of class actions looked at the Bell decision, looked at other decisions, looked at the regulations, and determined that farmers' claims representatives were exempt. And he turned out to be correct, even as Judge Jones determined with respect to a large number of the claims representatives. And with respect to willfulness, I think the case is even stronger, that as Judge Jones found, the law was fuzzy at best in some of these areas, and the company made a good faith determination that their claims representatives were exempt, and therefore, they should not be found to be willful or acting not in good faith. Thank you. Thank you. Thank you. Mr. Rubin, you get the last word. I think you have about four minutes left, three minutes left. Thank you, Your Honor. With respect to the 2004 DOL regulations, they reiterate the titles don't make the difference, that these cases have to be evaluated case by case. The preamble explicitly adopts, as accurately stated in the law, this Court's decision in Bothell. And I would say that Bothell, Webster, Bratt, and the Court of Appeals analysis in both Bell cases shows the proper way to analyze these cases. The DOL itself, in the August 26, 2005 opinion letter, drew distinctions between different categories of insurance claims representatives. It found that some, based on a factual analysis, exercise sufficient discretion of independent judgment, but in that same August 26, 2005 opinion letter, it concluded that others didn't. There is nothing in the regulations that makes an across-the-board determination about insurance claims adjusters. To the contrary, it reiterates what the law has always been, which is you must analyze it on an employee by employee, primary duty by primary duty basis. The primary duties of these claims adjusters, more so in the APD, less so in the liability, as Judge Jones found, was not to engage in a level of discretionary independent judgment on matters of significance that is required. When you have half the workforce of a company that are doing nothing but adjusting personal lines claims, and don't forget, there's also commercial lines, so even a greater percentage of the company is claims representatives. None of them individually can have a great enough impact on the company. Their job is to pay out money, like a cashier's job is to pay out money. The regulations point out that an error, a mistake, someone who handles expensive equipment and breaks it, a messenger entrusted with large sums of money that loses it does not have a substantial impact on the company. The question is whether that person's role is structured, so what that person does in the normal carrying out of his or her affairs substantially affects the structure and policy development of the company. No one individual claims representative for farmers does that. I want to focus briefly on the property. The property, referring the panel to the specific findings made by Judge Jones about the frequency with which these individuals engaged in the various acts described, make clear that in the vast majority of these cases, the property CRs do not exercise discretion and independent judgment. Very few claims get to the point where they engage in any of those activities. That is supported by the record. That is supported by the questionable coverage manual that addresses them. Farmers now pays overtime to every single property CR, just like it pays overtime to every single APD CR. The line that both parties agree was improperly drawn on the 3,000 average per month because neither side endorses that line, which was a proxy for determining is there a subgroup of property CRs who spend most of their time, their primary duties handling the most complex cases where judgment is required, this court must again go back and look at the record. And what the record shows is this. First, when we went to the special master in the damage phase, only 25, that is less than 5%, of the property CRs dropped out on the basis of having average claims above the 3,000 limit. There were very few of those individuals. Second, farmers, and this is why farmers are now paying them overtime, farmers does not distinguish in the way it structures the property CRs job responsibilities to have people specialize in the high judgment property claims that Judge Jones referred to. There is more of a haphazard assignment, whatever comes into the office. What that means is the record does not support the line drawn by Judge Jones or any other line because no property CR has as his or her primary duty the adjusting of the hypothetical high judgment claims that Judge Jones found may exist but specifically found is not the majority of the claims, is not what most of the property CRs do. There's no need for a remand in that point, although the state law issue. Wrap it up. Thank you very much, Judge Rubin. Thank you. The case just argued is submitted.
judges: Silverman , Gould, Rhoades